UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH ROLANDO JACK,

        Plaintiff(s),

  v.

LORETTA JACK,

        Defendant(s).

_____/

No. C 12-02459 DMR

**ORDER GRANTING MOTION TO DISMISS**

Defendant Loretta Jack moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Joseph Rolando Jack's Amended Complaint for failure to state a claim upon which relief can be granted. [Docket No. 58.] Plaintiff opposes the motion. [Docket No. 63.] For the reasons provided below, the court grants Defendant's motion and dismisses this case without prejudice.

**I. Background and Procedural History**

Plaintiff is the youngest son of Raymond Jack, a seventy-eight year-old man whom Plaintiff asserts suffers from dementia. (Am. Compl. ¶ 6.) Plaintiff also is the trustee and a beneficiary of the Raymond Jack Living Trust Dated February 8, 2002 ("the Trust"), a revocable trust established by Raymond Jack, the settlor. (Am. Compl. ¶ 1) Three years ago, Raymond Jack began a romantic relationship with Defendant, a woman thirty years his junior. (Am. Compl. ¶ 11.) Plaintiff asserts that the advent of this relationship coincided with a marked decrease in Raymond Jack's physical, mental, and social health – a process that Defendant facilitated by preventing family members from contacting Raymond Jack and by indoctrinating him with falsified stories "claiming his relatives flirted with her, are trying to kill him, take his money and place him in a retirement home." (Am. Compl. ¶ 16; *see* Am. Compl. ¶¶ 10-16, 19.) Plaintiff alleges that at some point Defendant stole approximately $30,000.00 from Raymond Jack. (Am. Compl. ¶ 17.) Around May 2011, Raymond

Jack and Defendant secretly married, and soon thereafter Defendant placed his home, which is property of the Trust, on sale. (Am. Compl. ¶ 18; *see* Am. Compl. ¶ 25.)

To mitigate Defendant's allegedly unlawful attempt to take possession of Raymond Jack's assets, Plaintiff "found Raymond Jack incompetent" pursuant to Article IV, § A of the Trust agreement.[1] (Am. Compl. ¶ 20.) He also filed a petition for conservatorship over Raymond Jack on April 8, 2011 in the San Francisco County Superior Court, *In re Proposed Conservatorship of the Person & Estate of Raymond Jack, Sr.*, No. PCN-11-294489 (Cal. Super. Ct. filed Apr. 8, 2011). (Am. Compl. ¶ 20.) During the pendency of the state court action, Defendant had the Trust assets devised to her and, on or about October 21, 2011, moved with Raymond Jack to Georgia. (Am. Compl. ¶¶ 21, 23.) On May 9, 2012, the Superior Court denied Plaintiff's petition on the grounds that "[a]ny request to establish a conservatorship is properly brought in the state where [Raymond] Jack resides." *In re Proposed Conservatorship of the Person & Estate of Raymond Jack, Sr.*, slip op. at 2 (May 9, 2012). Plaintiff's appeal of this decision is pending. Meanwhile, Defendant continues to attempt to sell Raymond Jack's home. (Am. Compl. ¶ 25.)

Plaintiff filed suit in this Court on May 15, 2012, stating claims for financial abuse of an elder, fraud, cancellation of deed, and to quiet title. On July 23, 2012, Defendant filed a letter with the court, which the court construed as a motion to dismiss. [Docket No. 10.] The court granted Defendant's motion on September 17, 2012, holding that Plaintiff had not established standing for his financial abuse of an elder and fraud claims, and did not properly plead his cancellation of deed and quiet title claims. *Jack v. Jack*, No. 12-2459 DMR, 2012 WL 4097730, at *2-5 (N.D. Cal. Sept. 17, 2012). The court therefore dismissed with prejudice Plaintiff's fraud claim as a Trust beneficiary and granted Plaintiff leave to amend his other claims. *Id.* at *5.

---

[1] During a September 13, 2012 motion hearing, Plaintiff told the court that the Trust agreement permits the trustee to summarily declare Raymond Jack incompetent. The agreement, however, makes clear that the effect of such a declaration of incompetence is merely that the trustee – Plaintiff – must use Trust funds to support Raymond Jack; the declaration has no other significance. [Docket No. 26 at 8.] *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (holding that court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading", *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Plaintiff filed his Amended Complaint on October 11, 2012. [Docket No. 42.] In his Amended Complaint, Plaintiff again brings claims for elder abuse, fraud, cancellation of deed, and to quiet title, along with a new claim for intentional interference with expected inheritance. (Am. Compl. ¶¶ 30-59.) Defendant now moves to dismiss. The court held a hearing on January 24, 2013.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

"[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III. Discussion

### A. Standing

The doctrine of standing "serv[es] to identify those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation and quotation marks omitted). Its operation arises from constitutional requirements embedded in Article III and other prudential considerations. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979). One of these prudential considerations is that an asserted claim generally must derive from a plaintiff's own legal rights and interests, and not those of a third party. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555-57 (1996) ("'[T]he general prohibition on a litigant's raising another person's legal rights' is a 'judicially self-imposed limi[t] on the exercise of federal jurisdiction . . . .'" (brackets in original) (citation omitted)); *accord Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *McCollum v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 878-79 (9th Cir. 2011). A plaintiff must demonstrate standing separately "for each for of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 185 (2000).

#### 1. Elder Abuse

To state a claim for elder abuse under California law, a plaintiff must allege that the defendant "(1) subjected an elder to statutorily-defined physical abuse, neglect, or financial abuse" and "(2) acted with recklessness, malice, oppression, or fraud in the commission of the abuse." *Von Mangolt Hills v. Intensive Air, Inc.*, No. 06-3300 JSW, 2007 WL 521222, at *2 (N.D. Cal. Feb. 15, 2007) (citing Cal. Welf. & Inst. Code § 15610.30) (citations omitted). Within the context of financial elder abuse, such as the claim at bar, a plaintiff must narrow these allegations to claim, *inter alia*, that the defendant, who knew or should have known that his conduct "is likely to be harmful to the elder," deprived the elder of a "property right . . . , regardless of whether the property

1  is held directly or by a representative[2] of the elder," for a wrongful use and/or intent to defraud or
2  by undue influence.[3]  Cal. Welf. & Inst. Code § 15610.30(a)-(c).

3      Plaintiff states his elder abuse claim as seeking relief for harms to Raymond Jack:

4      31. Defendant Loretta Jack at all relevant times was entrusted with the care and/or custody of Raymond Jack. Defendant subjected Raymond Jack to physical abuse, neglect or financial abuse.
    32. Without Raymond Jack's knowledge or consent, stole approximately $30,000.00 and other personal property from Raymond Jack.
    33. Defendant Loretta Jack married Raymond Jack for the sole purpose of defrauding him and knew he was susceptible to fraud and undue influence given his age and mental incapacity.
    34. Approximately March 2011, after Defendant Loretta Jack secretly married Raymond Jack, she placed 1237 Shafter Avenue in San Francisco on the market for sale in order to steal saleproceeds from Raymond Jack, who a man 30 years older [sic] than Defendant. Defendant Loretta Jack attempts to impair or defeat Plaintiff's interest in said real property.
    35. Defendant knew or should have known her conduct would likely cause harm to Raymond Jack. That conduct indeed deprived Raymond Jack of his right to his money and other property.
    36. Defendant Loretta Jack took, secreted, appropriated, and retained the property Raymond Jack, an elder, to a wrongful use within the meaning of Welfare and Institutions Code section 15610.30. Defendant engaged in such conduct either directly, or assisted in such conduct.
    37. In engaging in such conduct, defendant intended to defraud Raymond Jack within the meaning of Welfare and Institutions Code section 15610.30.
    38. As a direct and proximate cause of defendant's wrongful conduct, Raymond Jack has been deprived of his property and has sustained related damages of loss of income of money. Plaintiff has incurred attorney fees and costs, and will incur additional expenses for the review and correction of Raymond Jack's estate plan which defendant improperly altered.
    39. In addition to all other remedies provided by law, plaintiff is entitled to recover reasonable attorney fees and costs for financial abuse pursuant to Welfare and Institutions Code section 15657.5.
    40. Defendant's conduct constituted recklessness, oppression, fraud, and malice in the commission of the financial abuse and Raymond Jack is entitled to recover damages for the sake of example and by way of punishing defendant for financial abuse pursuant to Welfare and Institutions Code section 15657.5 and Civil Code section 3294.

---

[2] The statute defines a "representative" as "[a] conservator, trustee, or other representative of the estate of [the] elder" or "[a]n attorney-in-fact of [the] elder . . . who acts within the authority of the power of attorney." § 15610.30(d).

[3] California Civil Code § 1575 defines undue influence as:
1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;
2. In taking an unfair advantage of another's weakness of mind; or,
3. In taking a grossly oppressive and unfair advantage of another's necessities or distress.
Cal. Civ. Code § 1575.

(Am. Compl. ¶¶ 31-40.)

Plaintiff has not shown that he has standing to bring this claim.  He purports to bring this suit on behalf of Raymond Jack as an "interested person" under California Welfare and Institutions Code § 15657.3[4] and Probate Code § 48.[5]  (Am. Compl. ¶ 26.)  These statutes, however, concern actions for elder abuse after an elder's death.  In this case, though, the elder at issue – Raymond Jack – is alive.  Plaintiff cites to California Welfare and Institutions Code § 15600(j) and various cases to bolster his assertion that he nevertheless has standing, (*see* Am. Compl. ¶¶ 27, 29; Pl.'s Opp'n 2), but they do not stand for the proposition for which Plaintiff cites them.  Although section 15600 reflects the general intent of the California Legislature "to enable *interested persons* to engage attorneys to take up the cause of abused elderly persons and dependent adults," § 15600(j) (emphasis added), it is section 48(a) of the Probate Code which defines "interested persons" in the elder abuse context.  *Cf.* § 15657.3(d)(1).  Because the elder in this case is not deceased, Plaintiff cannot qualify as an "interested person" under the statute.  The case law to which Plaintiff cites in his Amended Complaint and opposition to the pending motion reinforces this conclusion.  *Covenant Care, Inc. v. Superior Court*, 32 Cal. 4th 771 (2004), *Delaney v. Baker*, 20 Cal. 4th 23 (1999), *Quiroz v. Seventh Avenue Center*, 140 Cal. App. 4th 1256 (2006), and *In re Estate of Lowrie*, 118 Cal. App. 4th 220 (2004), exclusively concern elder abuse actions brought by plaintiffs after the death of an abused elder.  Moreover, in *Delaney* the California Supreme Court noted that the Legislature realized its goal of broadening standing in elder abuse claims, as stated in section 15600(j), by providing for

---

[4] Section 15657.3(d) states in relevant part:
*after the death of the elder* . . . , the right to commence or maintain an action shall pass to the personal representative of *the decedent*.  If there is no personal representative, the right to commence or maintain an action shall pass to any of the following, if the requirements of Section 377.32 of the Code of Civil Procedure are met:
(A) An intestate heir whose interest is affected by the action.
(B) The decedent's successor in interest, as defined in Section 377.11 of the Code of Civil Procedure.
(C) *An interested person, as defined in Section 48 of the Probate Code*, as limited in this subparagraph.
§15657.3(d)(1) (emphasis added).

[5] Section 48 defines an "interested person" as "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate *of a decedent* which may be affected by the proceeding."  § 48(a)(1) (emphasis added).

augmented remedies in elder abuse cases brought after an elder's death. 20 Cal. 4th at 33; *see Quiroz*, 140 Cal. App. 4th at 1283-84.

Plaintiff also implies that he has standing to pursue an elder abuse claim on behalf of Raymond Jack due to Raymond Jack's alleged mental incapacity. (*See* Am. Compl. ¶ 33.) However, Plaintiff has not demonstrated that Raymond Jack "may be suffering from a condition that materially affects his ability to represent himself . . . to consult with his lawyer with a reasonable degree of rational understanding . . . or otherwise to understand the nature of the proceedings," as the law demands. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir.1986) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). During the motion hearing, Plaintiff conceded that Raymond Jack has not been adjudicated incompetent, nor has he had a guardian *ad litem*, conservator, or similar representative appointed to represent him. *See In re Proposed Conservatorship of the Person & Estate of Raymond Jack, Sr.*, slip op. at 2 (May 9, 2012);[6] Marc Hankin, *The Elder Abuse and Dependent Adult Civil Protection Act (Cheap. 774, Stats. 1991*, 26 Beverly Hills B. Ass'n J. 18, 21 & n.17 (1992); *see also* Fed. R. Civ. P. 17(c); *cf. Bush v. Horizon W.*, 205 Cal. App. 4th 924 (2012) (guardian *ad litem* bringing elder abuse suit on behalf of elder mother). Rather, Plaintiff has made a unilateral declaration that Raymond Jack is incompetent and argues that this assertion is sufficient to grant him standing. (*See* Am. Compl. ¶¶ 6, 20.) Plaintiff's opinion is not enough. *See Massie ex rel. Kroll*, 244 F.3d 1192, 1196 (9th Cir. 2001) (prohibiting individual suing on behalf of party in interest from proceeding in 'next-friend' capacity because individual failed to "present 'meaningful evidence' that [party in interest] is suffering from a mental disease, disorder, or defect that substantially affects his capacity to make an intelligent decision") (citation omitted). Because Plaintiff has not shown that he has standing to bring this cause of action, the court orders it dismissed without prejudice.

**2. Fraud, Cancellation of Deed, and Quiet Title**

Plaintiff has not demonstrated that he has standing to bring his fraud, cancellation of deed, and quiet title claims. In his fraud claim, Plaintiff alleges that Defendant defrauded Raymond Jack,

---

[6] The court takes judicial notice of this court decision pursuant to Federal Rule of Evidence 201.

causing Raymond Jack to give her his money and alter his estate planning documents, harming Raymond Jack and the Trust beneficiaries.[7] (*See* Am. Compl. ¶¶ 42, 44, 46.) Plaintiff's cancellation of deed claim alleges that Defendant induced Raymond Jack to put her on the deed of his house, which is part of the Trust,[8] thereby harming Raymond Jack and the Trust beneficiaries.[9] (*See* Am. Compl. ¶ 48.) Though it is unclear, in his quiet title claim, Plaintiff appears to bring suit in his capacity as trustee of the Trust to allege that any interest that Defendant has in Raymond Jack's

---

[7] Plaintiff's claim in full alleges that:
42. Defendant Loretta Jack made misrepresentations to Raymond Jack known to be false with the intent to defraud Raymond Jack which Raymond Jack justifiably relied upon and resulted in damage to Raymond Jack.
43. Defendant began in 2010 misrepresenting to Raymond Jack that his children were trying to steal his money; that his brothers were flirting with her; that she could care for him because she was a nurse; that she had been married only once before her marriage to Raymond Jack; and that she was the only person whom he could trust. Defendant knew these statements to be untrue with the intent to defraud him. Raymond Jack relied upon her statements to the extent of secretly marrying defendant and allowing her complete control over his assets to where she has wrongfully taken them for her personal use. Defendant's statements were false and misleading, and designed to induce and unduly influence Raymond Jack.
44. The false and misleading statements of defendant were material to Raymond Jack to his detriment and caused him: (1) to believe he could not live in his home; (2) to be deprived him of his money; and (3) to change his estate planning documents thereby *defeating the interests of beneficiaries of the Raymond Jack Living Trust*.
45. Defendant knew that these statements were false and misleading and that Raymond Jack would rely upon them to his detriment and defendant thereby intended to defraud Raymond Jack.
46. As a direct and proximate result of defendant's wrongful conduct, plaintiff suffered damages as alleged herein.
(Am. Compl. ¶¶ 42-46 (emphasis added).)

[8] During the motion hearing Plaintiff further alleged that Defendant forged the deed to gain ownership interest in the property.

[9] This claim states in full that:
48. In April 2011, after the trustee rendered Raymond Jack mentally and/or physically incapacitated, Defendant Loretta Jack changed the Raymond Jack Living Trust which made her to sole beneficiary [sic] and changed the deed at 1237 Shafter Avenue in San Francisco, California, Raymond Jack's home. Defendant induced Raymond Jack to transfer title to her during the period of time when Raymond Jack was mentally incapacitated. If the deed is left outstanding, it may cause serious injury to Raymond Jack and the beneficiaries of the Trust.
49. Plaintiff seeks a finding that Defendant has no ownership interest in the subject property and it never has existed because of Raymond Jack's lack of capacity when title was transferred to defendant. Said Deed is void and should be declared void. WHEREFORE, Plaintiff prays judgment against Defendant, and each of them, as hereinafter set forth.
(Am. Compl. ¶¶ 48-49.)

home is invalid and has harmed the Trust.[10] (*See* Am. Compl. ¶ 52.) In sum, Plaintiff has implicitly or explicitly alleged standing in these claims on three bases: in his personal capacity on behalf of Raymond Jack, as a beneficiary of the Trust, and as trustee of the Trust.

Plaintiff lacks standing to bring these claims to the extent that he seeks remedy for harms that Raymond Jack allegedly incurred. Plaintiff is not the real party in interest and has not demonstrated that he has authority to bring suit on Raymond Jack's behalf. *See* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."); *30.64 Acres of Land*, 795 F.2d at 805. Although Plaintiff argues that he has standing due to Raymond Jack's alleged mental incapacity, Plaintiff has not produced evidence supporting this assertion apart from reiterating that he has personally deemed Raymond Jack incompetent in accordance with the Trust agreement. As previously noted, the effect of such a declaration of incompetence under the agreement is merely that the trustee must use Trust funds to support Raymond Jack. [Docket No. 26 at 8.] It has no other significance. Moreover, during the motion hearing, Plaintiff conceded that Raymond Jack has not been adjudicated incompetent and that Plaintiff is not Raymond Jack's guardian *ad litem*, conservator, or similar representative. Plaintiff thus may not proceed in Raymond Jack's name. *See Elk Grove Unified Sch. Dist*, 542 U.S. at 14; *United Food & Commercial Workers*

---

[10] Plaintiff's cause of action, in relevant part, states:
51. Plaintiff is seeking to quiet title against the claims of Defendant Loretta Jack as the true owner of the following subject property:
> COMMENCING at a point on the southwesterly line of Shafter Avenue, distant thereon 200 feet northwesterly from the northwesterly line of Hayes Street; running thence northwesterly and along said line of Shafter Avenue 25 feet; thence at a right angle southwesterly 100 feet; thence at a right angle southwesterly 25 feet; thence at a right angle northwesterly 100 feet to the point of commencement. BEING part of Lot No. 3 in Block No. 390, San Francisco Homestead and Railroad, Association.
> Commonly known as:
> 1237 Shafter Street, San Francisco, CA
> APN: 4792-25

52. The Raymond Jack Living Trust is the true owner based on its recording of the grant deed on February 8, 2002. The claims of Defendant are without any right whatsoever and such Defendant has no right, title, estate or lien interest whatsoever in the subject property or any part thereof.
53. Plaintiff seeks to quiet title as of the date of this complaint and prays for a determination of the title on behalf of the Trust against Defendant's adverse claims.
(Am. Compl. ¶¶ 51-53.)

*Union Local 751*, 517 U.S. at 556-57; *McCollum*, 647 F.3d at 878-79; *see also* Fed. R. Civ. P. 17(c).

Plaintiff also has no standing to bring his fraud, cancellation of deed, or quiet title claims in his capacity as a Trust beneficiary.[11]  Though it is not clear from the Amended Complaint, Plaintiff appears to contend that he has standing as a beneficiary, because Defendant's alleged torts against Raymond Jack depleted the Trust assets, which its beneficiaries hoped to inherit.  However, "the beneficiary of a trust generally is not the real party in interest and may not sue in the name of the trust.  A trust beneficiary has no legal title or ownership interest in the trust assets; his or her right to sue is ordinarily limited to the enforcement of the trust, according to its terms."  *Saks v. Damon Raike & Co.*, 7 Cal. App. 4th 419, 427 (1992); *accord In re Estate of Bowles*, 169 Cal App. 4th 684, 691 (2008); *see also Steinhart v. Cnty. of L.A.*, 47 Cal. 4th 1298, 1319 (2010) ("Any interest that beneficiaries of a revocable trust," such as the Trust, "have in trust property is 'merely potential' and can 'evaporate in a moment at the whim of the [settlor, Raymond Jack].'") (brackets in original) (citations omitted).  Because Plaintiff's claims do not seek to enforce the Trust, Plaintiff has no standing.

Plaintiff also lacks standing to bring the claims as trustee of the Trust.  Pursuant to Article III, § A of the Trust agreement, the Trust is a revocable trust, and Raymond Jack the Settlor.  [Docket No. 26 at 8.]  Under the terms of the agreement, Raymond Jack retains the right to revoke the Trust in whole or in part.  [Docket No. 26 at 8.]  Under California law, "the holder of a power of revocation is in control of the trust and should have the right to enforce the trust. . . . A corollary principle is that the holder of the power of revocation may direct the actions of the trustee . . . ." *In re Estate of Giraldin*, 290 P.3d 199, 211 (Cal. 2012) (ellipses in original) (citing Cal. Prob. Code § 15800) (citation and quotation marks omitted); *see* § 15800(b) ("The duties of the trustee are owed to the person with the power to revoke.").  Moreover, "'[p]roperty transferred to, or held in, a revocable inter vivos trust is deemed the property of the settlor.'"  *Steinhart*, 47 Cal. 4th at 1319 (brackets in original) (quoting *Zanelli v. McGrath*, 166 Cal. App. 4th 615, 633 (2008)) (emphasis

---

[11] The court previously dismissed Plaintiff's fraud claim in his capacity as a trust beneficiary with prejudice.  *Jack*, 2012 WL 4097730, at *4.

10

removed) (citation omitted).  "'[A] settlor with the power to revoke a living trust effectively retains full ownership and control over any property transferred to the trust.'"  *Id.* (quoting *Arluk Med. Ctr. Indus. Group, Inc. v. Dobler*, 116 Cal. App. 4th 1324, 1331-32 (2004)).

Because Raymond Jack is the settlor of the Trust, he maintains control of the Trust, including the power to revoke or enforce it.  The Trust's assets, such as the property at dispute in this case, belong to him, and he may dispose of them as he desires.  Plaintiff, as the trustee, has a duty to honor his request.  *See In re Estate of Giraldin*, 290 P.3d at 214 ("For example, if the settlor of a revocable trust learned he had a terminal disease, and was going to die within six months, he might decide that his last wish was to take his mistress on a deluxe, six-month cruise around the world—dissipating most of the assets held in his trust.  The trustee, whose duties are owed to the settlor at that point, would have no basis to deny that last wish.") (citation and quotation marks omitted).  As trustee, Plaintiff has no standing to challenge the manner in which Raymond Jack has chosen to dispose of the Trust assets.  Because Plaintiff has not shown that he has standing to pursue his fraud, cancellation of deed, and quiet title claims in any of his alleged capacities, the court orders them dismissed without prejudice.[12]

**B. Intentional Interference with Expected Inheritance**

To plead a cause of action for the intentional interference with expected inheritance, a plaintiff must allege five distinct elements:

> First, the plaintiff must plead he had an expectancy of an inheritance. . . . Second, . . . the complaint must allege causation.  This means that . . . there must be proof amounting to a reasonable degree of certainty that the bequest or devise *would have been in effect at the time of the death of the testator* . . . if there had been no such interference. . . .  Third, the plaintiff must plead intent, i.e., that the defendant had knowledge of the plaintiff's expectancy of inheritance and took deliberate action to interfere with it. . . .  Fourth, the complaint must allege that the interference was conducted by independently tortious means, i.e., the underlying conduct must be wrong for some reason other than the fact of the interference. . . .  Finally, the plaintiff must plead he was damaged by the defendant's interference.

---

[12]Even if Plaintiff could establish that he has standing to bring his fraud claim, he does not plead specific facts explaining why Defendant's alleged misrepresentations were false at the time they were made, as Rule 9(b) of the Federal Rules of Civil Procedure requires.

Assuming *arguendo* that Plaintiff had standing to bring the quiet title action, it still would fail because Plaintiff does not state the title as to which he seeks a determination, the adverse claims to the title, or a statement of the reasons why a determination as of the date of the filing of the complaint is sought.

*Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1057 (2012) (fourth ellipses in original) (emphasis added) (citations and quotation marks omitted). Additionally, the defendant's alleged independent tortious conduct must have been directed at the testator. *See id.* at 1057-58. "In other words, the defendant's tortious conduct must have induced or caused the testator to take some action that deprives the plaintiff of his expected inheritance." *Id.* at 1058 (citations omitted).

Plaintiff has not stated a claim for intentional interference with expected inheritance. One of the central requirements in bringing this claim is that the testator from whom a plaintiff expected to receive an inheritance is deceased. *See Beckwith*, 205 Cal. App. 4th at 1057 (holding that to properly state claim "there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect *at the time of the death of the testator*") (citing Restatement (Second) of Torts § 744B) (emphasis added). However, Raymond Jack is alive. Plaintiff therefore cannot meet this requirement. The court dismisses the claim without prejudice.

### IV. Conclusion

For the reasons stated above, the court grants Defendant's motion. In its order on Defendant's first motion to dismiss, [Docket No. 39], the court highlighted the standing problems in Plaintiff's original causes of action for elder abuse, fraud, cancellation of deed, and quiet title, and ordered him to amend his complaint to rectify these deficiencies. Because Plaintiff has again failed to show that he has standing to bring these claims, the court dismisses them. *Warth*, 422 U.S at 501-02. The court also dismisses Plaintiff's claim for intentional interference with expected inheritance without prejudice, as amendment at this time would be futile. The court further orders that this case be dismissed without prejudice. Although Plaintiff currently cannot amend his complaint to present viable causes of action, circumstances may change in the future.

IT IS SO ORDERED.

Dated: February 12, 2013

_____
DONNA M. RYU
United States Magistrate Judge

GRANTED